Thank you, Your Honor. May it please the Court. In this case, a plaintiff who has already been made whole by a settlement agreement with responsible parties is now armed with only conclusory allegations of deliberate indifference and is pointing the finger at four corrections officials who were so walled off from decisions affecting inmate dental care and so without the ability to affect the plaintiff's dental care in particular that their conduct could not have risen to the level of deliberate indifference. The plaintiff had a condition that caused his teeth to become periodontally non-restorable many years ago. He refused the dentist's advice to have his teeth removed. Then, on July 1, 2013, while the barter unit where he was incarcerated had a dentist's vacancy, he complained of tooth pain. Corizon Health, a private health services company, had exclusive responsibility for inmate dental care under a contract with the ADC. Corizon Health negotiated a settlement agreement with the plaintiff early in this litigation, but the ADC defendants know, and a record shows, that Corizon Health medical staff provided the plaintiff with pain medicine and other treatment, that Corizon Health placed him on a list to see the dentist, and that he was scheduled to be seen by a dentist the week of August 15 and again in early September. Counsel, could I ask a question, please, about our jurisdiction? Do we have jurisdiction over this motion to reconsider the original ruling? Yes, Your Honor, and in the jurisdictional statement of the ADC defendants' brief, we cite federal practice and procedure, which there was a case very similar to the procedural posture here, where there was a motion to reconsider filed subsequent to new authority, and it was held there that a denial of qualified immunity is able to be taken up on appeal. Never mind. I'll find it. I don't want to take any more of your time. Yes, Your Honor. It is in the jurisdictional statement of our brief. But just to pursue this for a moment, is this a motion to reconsider the original ruling or a new motion on qualified immunity? Filed as a motion to reconsider the original motion, but is it in fact, in substance, a new motion for qualified immunity? Yes, Your Honor. This is a request for qualified immunity. The review is de novo. It's a new one. Is that what you're saying? It's not a motion to reconsider the old one? Well, Your Honor, we did file a motion to reconsider the court's denial of qualified immunity. Okay. To reconsider the issue of qualified immunity. That's correct. Okay. Thank you. Thank you. The plaintiff, for his part, has made only three non-conclusory allegations of why there was a delay in this case. For his part, he has attributed the delay to Khorizan Health's failure to meet its obligations to maintain a dentist at the Varner unit, to Khorizan Health dental assistant, Ms. Ludlam, who was responsible for scheduling dental appointments, but in the plaintiff's words, was unable to carry out her duties due to her advanced age, and to a missed dental appointment in early September 2013. The defendants who remain are not medical staff, but corrections officials. They're entitled to qualified immunity for several reasons, but I want to focus on three. First, none of the ADC defendants were aware that the plaintiff had an unmet need for dental care. Second, they were not aware of any unaddressed insufficiency in the dental care made available to Varner unit inmates, whether at the Varner unit itself or elsewhere. And third, they were not authorized to remedy a delay in inmate dental care. So first, none of the ADC defendants were aware that the plaintiff had an unmet need for medical care. This was not a situation where it would have been obvious to a layperson that there was a serious medical need. Did the inmate make requests for dental assistance? Yes. Through whom did those requests go? Yes, Your Honor. The inmate made requests, made sick call requests, and those sick call requests were received and reviewed exclusively by Corizon Health officials. So the defendants here didn't receive the notices? No, the defendants here never received any sick call requests. They never reviewed any of the medical grievances that were filed. They never saw any of those grievances. So wherever the plaintiff's claims can be checked against an objective record, they're contradicted by that record. Although the plaintiff claimed that his face was disfigured from swelling and that he had abscesses and that he lost weight because he couldn't eat, the record is not consistent with these claims. Wouldn't those be fact matters that would be not something to resolve on the qualified immunity, the disputes about what's in the record? Well, Your Honor, I believe that these facts go to what even potentially could have been known by the ADC defendants in this case. The ADC defendants would not have been reviewing the medical records, but even had they done so, the objective medical records do not reflect a serious medical need in this case. Therefore, the ADC defendants could not have had awareness of facts indicating a serious medical need. What's the impact of our Culler v. Baldwin case, which seems to have some similarities to this one? Yes, Your Honor, and I'm happy to... Here in the penal institution? Yes, Your Honor, I'm happy to move to discuss that case. In Culler v. Baldwin, well, let me say this. The defendants, let me start like this. The court held as a matter of first impression in Culler v. Baldwin, that where a dental staff shortage was not the product of an Iowa State Penitentiary prison official's conduct, that those prison officials were entitled to qualified immunity from deliberate indifference claims. The instant case is more similar to Culler v. Baldwin, and it's more factually and legally analogous to that case than it is to any other case. But in Culler, it seems that the court really focused on the evidence that showed that the prison really did take some steps to try to get dentists in. They were recruiting, there was testimony that they were offering the highest salary rate that they could, and that they were really putting forth a good effort. Is that the same here? It doesn't seem that there's the same record here as there was in Culler. Your Honor, there is an analogous record here, and this goes, I believe, to my second point, which, if you will take a look at Warden Watson's supplemental declaration, which is in the addendum, it established facts that are undisputed. That declaration recounts the efforts of Corizon Health to hire a dentist. So, for instance, the warden received monthly updates from Corizon concerning the status of dental care, and he knew as of June 25th that Corizon Health was interviewing a dentist at that time. He also knew that efforts were being made to provide dental care to inmates at the Varner Unit. So, Dr. Larry Russell was coming to the Varner Unit two days a week at that time to provide dental care to address any insufficiency. One month later, Corizon Health told the warden that it was then hiring a dentist, and that Dr. Russell was still coming to the Varner Unit once two days a week. And, again, this is all in the supplemental declaration. Further established on August 27th that Corizon Health's newly hired dentist had resigned and that Corizon Health was recruiting for the position again. But wasn't there also evidence that there was another available dentist at another unit within the prison? Your Honor, the dentist I believe you're referring to is Dr. Larry Russell, who was a full-time dentist at the Cummins Unit, and Corizon Health had Dr. Russell go to the Varner Unit two days a week to provide dental care to inmates at the Varner Unit. And in addition to those things, on August 27th, the declaration shows that inmates were being sent to another unit for extraction two to three times a month. So the subjective element of deliberate indifference, as Your Honors well know, requires three things. You must have knowledge of facts from which it could be inferred that a serious medical need exists. You must draw that inference. And third, one must deliberately disregard that need. Here, the first is not met. There is no evidence that the defendants had knowledge of facts indicating that there was any unaddressed insufficiency in the dental care made available to Varner Unit inmates. So they could not have been deliberately indifferent. Your Honor, here, certainly things like abscesses or swelling could indicate a serious medical need, but no abscess, bleeding, redness, or swelling was ever noted in the plaintiff's chart. The Corizon Health staff who were medically trained and had the relevant expertise did not determine at any time that there was a serious health condition that needed to be addressed. And corrections officials, being medically untrained, did not have the expertise to diagnose the plaintiff's condition for themselves. What about the grievances? Yes, Your Honor. Can you detail some of the concerns? And actually, I think there was one that was found to have merit. Yes, Your Honor. Those grievances were handled by Corizon Health. So here's the way the process would work. The grievance officer at the unit would direct all medical grievances to Corizon Health personnel who, again, had the responsibility and expertise to respond to those grievances at the unit level. But the defendants never saw any of those grievances. Didn't they have to be signed by a prison official? No, Your Honor. They were signed by Corizon Health employees. Wendy Kelly, director? Oh, yes, Your Honor. And that was where I was about to go. On the appeal, so everything that I've mentioned so far is at the grievance at the unit level, there was an appeal to ADC administration. Again, that would take the grievance out of the unit to ADC central office, where generally the deputy director for health services would review them and respond to them. And I will just note that there is evidence in the record that the ADC required the unit to implement a performance review plan, excuse me, a performance improvement plan. This is at appendix 146. The plaintiff actually quotes a provision of the contract between Corizon Health and the ADC regarding attempts to determine the cause and scope of an identified problem or concern. And dental clerk C. Selvey replied on August 15th that the unit does have a quality improvement process in effect. So the ADC had implemented a quality improvement plan. It had done what it could do. What it could not do was to force Corizon Health to fill a dental vacancy where there were no dentists. And I don't want to take up all of your rebuttal, but just one question I had. You say in your brief you're not trying to immunize the ADC from any claims, but some, they're so walled off. Where is that? What's the line there between being so walled off that you have no liability and really getting immunization by delegating this to Corizon? Yes, Your Honor. And this is, I believe, mischaracterized in Appalachia's brief. We're not saying we don't have qualified immunity. What we are saying is the fact that there is a contracted medical provider by itself without looking at any other facts, that alone does not immunize the ADC defendants from liability in this case. We have to go beyond and look at the actual situation as it existed to determine whether or not there's qualified immunity in this case. So I'll reserve the remainder of my time. Thank you, Mr. Cantrell. Mr. Barton? If it pleases the court, this matter comes here today on the trial court's denial of the defendant's motion to reconsider a motion for summary judgment on the issue of deliberate indifference, with the predicate of that being the Culler decision. If I mispronounce that name, I apologize. That motion for reconsideration was filed on November 9th of last year. The Culler decision, as the court is aware, is an Iowa case whereby the defendants were those parties charged with the responsibility of procuring a dentist. And it took over a year to get a dentist in this particular unit, and they were sued. Their case was dismissed by this court based on the acceptance of the evidence that the corrections officials had behaved reasonably and had made reasonable efforts to procure a dentist. This case is factually different from that. The defendants here, the remaining defendants in this case, are the warden, the assistant warden, the chief of security, and the assistant chief of security at the Varner unit of the Arkansas Department of Corrections, who are not charged with the responsibility of hiring a dentist. What their deliberate indifference was predicated on is their management of this situation. Their unit was without a dentist for early June to late September. Counsel, would you speak more specifically to what was the conduct of these defendants that demonstrate deliberate indifference? It seems the condition was certainly regrettable for anyone to have to suffer with periodontal disease, but where was the emergency? Where's the seriousness of the condition that creates a perception or a reality of deliberate indifference? Well, as the court is aware, the first thing that we have to have here is a serious medical condition. This gentleman, the plaintiff here, had a serious dental condition, a serious medical condition. It was causing him pain. He couldn't go to the dentist because there was no dentist. He saw the prison nurse who gave him pain medication. He extracted two of his teeth during this three-and-a-half-month period that they were without a dentist. When he finally saw the dentist on, I think it was September the 29th, if I remember correctly, seven of his teeth were then extracted by the dentist. So I think we certainly have at the very minimum a fact question as to whether we have a serious medical or, in this case, dental condition, if that speaks to your question. Well, and what analogous prior case shows that the facts here constituted deliberate indifference? Well, I cannot give you a case where a warden, where senior corrections officers had no dentist and then their conduct was subject to litigation. I can't find that. The idea of the lack, the deprivation, the delay of proper dental treatment is well established in the law. The Culler case certainly establishes that as a basis for a deliberate indifference claim. There are two cases cited in the Culler case that recognize that, a 2010 case and a 2002 case. We have cited cases as far back as 1999 where the delay, the denial, the deprivation of proper dental services can form the basis of deliberate indifference. And this is somewhat of a unique case in the sense that I would love to be able to provide you with the case where some correction officer was sued under this in some other state, but that's not here. What we are standing on is the Eighth Amendment right to proper dental care in these types of circumstances for an inmate. The defendants here, your honors, are senior corrections officers. They are a warden. They are an assistant warden. They are the chief of security, and they are the assistant chief of security. These are experienced correctional professionals. They would be well aware that it would be their responsibility to manage this situation. But what about the evidence that they were bringing this Dr. Russell from another unit, that they were making efforts to get a dentist available for inmates who needed the treatment? Yes, ma'am. And what we have is the declaration of Warden Watson, which is in the record. And what we do know as a result of that was he was well aware that there wasn't a dentist in his unit. He's the warden. He would have known that anyway, but it's certainly on the record in his declaration that he knew that, that he was receiving regular updates from Khorizon about this situation. And that speaks to the fact that this was a serious situation. And at the end of the day, then, in terms of his management, these defendants' managements of that situation generally and as it relates to this defendant particularly, it stops there. It does not go on to address, and that there was a replacement dentist that was in a day or two. And we don't know if those were full days, if they were an hour for each day. When you say a day or two, you mean total? Day or two total or a day or two week? Well, in the affidavit, it makes reference to a day or two a week. In the magistrate's decision, it made reference to a day or two a month. And so both of those timelines are in the record. But what we don't have is the warden in his declaration stated that he was receiving updates from Khorizon. What we don't have is any action being taken on behalf of the ADC. There was not inquiry as to how are we handling emergencies, what happens to someone when the dentist isn't here. The grievance process was mentioned. And my guy filed numerous, numerous grievances and that they went to Khorizon. Well, at the end of the day, they were upheld. It was determined that there was merit to his position. It was, of course, by the time we work through the system and go to the appeal and that goes to the central office, the matter is resolved because September 29th comes and goes and the 17th are finally extracted. There's no evidence that the ADC officials, in particular, Warden Watson or the assistant warden, that they made inquiry of Khorizon since Khorizon was to receive the grievances. You know, are we getting grievances? You know, or do we have people out here, the inmates that we're responsible for, are they having a problem? Are they grieving this problem? There's no indication that there was an inquiry. There's no indication that there was a response by the warden, by the assistant warden, that, you know, the Cummins unit is right down the road. It's two miles away and there's a dentist there. You know, the warden wasn't charged with the responsibility of hiring the dentist. The assistant warden, the security officers, they were responsible with managing this situation. They knew they didn't have a dentist and they're on inquiry and so, therefore, they were aware of facts that put them on notice that a problem could exist and they didn't take any effort beyond that. In the record, the plaintiff alleges that he personally told the, I think, Bolden and Malone, or the security officer and the assistant security officer. He, of course, couldn't personally tell the warden because he didn't have the opportunity to go knock on the warden's door. All he could do was file the grievance and put that in play. We think that the standard for deliberate indifference is met here, at least in terms of there being a fact question that would mandate a trial. As the magistrate judge found in his recommendation, is there was nothing about the motion to reconsider that offered any reason that would, you know, reasonable conduct on behalf of the defendants that would cause him to change his mind and that was the position that Judge Moody ultimately adopted a couple of weeks later. Do you read the motion to consider as focused entirely on color, a change of law? That's what's cited as the basis for the motion to reconsider. That is exactly how I read that, Your Honor. And we stated in our brief that we think that, you know, that's sort of the beginning and the end of this particular proceeding. But the other issues were addressed in the appellant's brief and certainly we wanted to respond to them as best we could. It is our belief that this is not a particularly complex matter or a particularly close question. We think that the plaintiff had an obvious medical or dental problem. There's certainly a fact question as to that. We think that the defendants were aware of the lack of dental coverage for the unit. And in fact, two of the four defendants were personally told by the plaintiff that I've got a problem. The plaintiff did everything he could to bring this to the attention of the authorities through the grievance process. While receiving regular updates on this situation, which I think speaks to the importance of it, there is no evidence in the warden's declaration that he took any action to attempt to manage that. What's the implication of the magistrate's conclusion that there was a failure to pursue administrative remedies here? I'm not sure that that is a particular issue in this case because the plaintiff did what he could to pursue his administrative remedies, in my opinion, and that is to pursue the grievance process. And ultimately, one or more of his grievances were actually upheld by the central office. And I think it's also an important fact in this case that once the central office reviewed that, that they required, as was mentioned by counsel, a performance improvement plan. And that got sent back to the very defendants that remain in this case. And we think that is an important factor, that there are fact questions here as to the plaintiff's injury, as to the knowledge of the defendants that would put them on notice of a problem such as this, and their lack of a response to that. It is the law, as I appreciate it, that deliberate indifference can include ignorance or willful ignorance. And when the warden knows he's got a problem and he makes no inquiry as to how is this being played out among my inmates, are my guys in trouble, how are we handling emergencies, is anybody grieving, what can we, what can I as the warden, what can I as the assistant warden do to assist Corison in this difficult situation? If we have an emergency, if we have a guy in need, there's a dentist two miles away, what can we do to facilitate that? Do we have any people who are grieving that their needs are not being met? And to wall yourself off was a term used earlier, that's just not a defense in this case. They knew they had a problem, and they, based on the evidence that we have made no effort to determine the extent of that problem, they ended up with a performance improvement plan at the end of it back from the central office. Meanwhile, my guy, Mr. Williams, the plaintiff, went through four months without a dentist. During that period of time, he extracted two of his own teeth, and when he finally saw the dentist, he had seven teeth extracted. And we think that there are ample reasons for there to be fact questions that exist that allow this matter to be tried, and that Magistrate Volpe was correct in his recommendation to Judge Moody, and Judge Moody was correct in his acceptance of that recommendation that this motion be denied and that the matter go to trial. What if the defendants reasonably believed that there was really no point in trying to make an effort because they had no power to affect the result? Suppose with me for a moment that they were wrong in that. But suppose they reasonably believed that they were simply helpless, that they were not because of anything they did, but they were helpless because they were walled off, and whatever effort they might otherwise have made was simply going to fall on deaf ears. Well, respectfully, I don't think that that could be a good-faith belief. The warden was the warden. The assistant warden was the warden. They don't hire dentists, but they do manage their department. They know that their inmates are entitled to reasonable dental services, particularly in the circumstances where we've got an inmate losing teeth. But they knew they didn't have a dentist, and they made no effort to determine, no discernible effort, to determine how this was playing out, this three-and-a-half-month period, how it was playing out in the lives of their inmates. So if they drew that conclusion, it was not based on any effort to learn any fact whatsoever, and, therefore, I would reject that that could have been a good-faith conclusion. There's nothing further. Thank the Court for your attention. Mr. Cantrell, your rebuttal. Thank you, Your Honor. Judge Arnold, the citation to federal practice and procedure is Section 3950. I found it in your brief. You did? Okay. And I believe it discusses a case where there was a similar. Yes, yes, I have. I knew that. I knew that section. Okay. Before, I just wanted to know if you had any other authority. But that's okay. Go ahead. Just a couple further things. The plaintiff has not even alleged that he showed or described any serious symptom to any of the ADC defendants. All he has done is to repeat conclusory allegations that the defendants were deliberately indifferent. And opposing counsel has acknowledged he cannot give a case similar to this where the law was clearly established. And I would even point that Kohler is even more similar to the facts here, because in Kohler, the defendants in Kohler were custodians of the inmate. And this court found that the defendants were entitled to qualified immunity in that case. So I would request that the court reverse grant the defendants request for qualified immunity and remand for dismissal the complaint. Thank you. Thank you, counsel. Court wishes to thank attorneys for both sides in this case for your presence. The arguments you provided to the court and the briefing you submitted will take your case under advisement. You may be excused.